

# THE ATTORNEY GENERAL
## OF TEXAS

PRICE DANIEL
ATTORNEY GENERAL

AUSTIN 11, TEXAS

May 8, 1947

Hon. C. H. Cavness
State Auditor
Austin, Texas

Opinion No. V-191

Re: Whether the liquida-
tor and those func-
tioning under him un-
der Art. 5068c, V.C.S.,
constitute a state a-
gency within the mean-
ing of Arts. 4413a-8
through 4413a-23, V.C.
S., and Art. 422b, V.
P.C., prescribing the
duties and authority
of the State Auditor.

Dear Sir:

You request advice as to whether the "Liqui-
dating Division" of the Board of Insurance Commission-
ers as presently constituted is a state agency under
the general terms of the statutes. After quoting from
the provisions of House Bill No. 249, Chapter 3, Acts
46th Legislature, Regular Session, 1939, page 389, which
is published as Article 5068c of Vernon's Civil Statutes,
providing for a statutory liquidator for insurance com-
panies in receivership, you further point out as fol-
lows:

"The Departmental Appropriation bill
for the current biennium for the Board of
Insurance Commissioners carries the follow-
ing item:

'33. For enforcement of Conservator
Act as per H. B. 249, 46th Legisla-
ture, $6,000.00.'

The special rider in the Life Division Sec-
tion contains the following language:

'. . . There is hereby appropriated
out of the General Revenue Fund for
each year of the biennium beginning
September 1, 1945, the sum of $6,000.00
or so much thereof as may be necessary
for the use of the Board of Insurance
Commissioners in the enforcement of
House Bill 249, Acts of the Regular
Session, 46th Legislature. In order
to reimburse the general revenue be-
cause of any withdrawals from said ap-
propriations, it shall be the duty of
the Board of Insurance Commissioners
to deposit to the credit of the Gener-
al Revenue Fund all of the assets re-
covered under the terms of said House
Bill 249.'

"The Liquidator appointed by the Board
of Insurance Commissioners also serves as
Legal Examiner for the Board. He is paid a
salary at the rate of $5,200.00 per annum,
paid monthly as follows:

'Conservator' - out of General Revenue
            Fund                 $144.45

'Legal Examiner' - out of Examination
            Fund                  288.88

Total monthly salary              433.33

That portion of the salary paid as 'Conserva-
tor', out of the General Revenue is subsequent-
ly refunded to the General Revenue Fund out of
assets of insurers in liquidation or under con-
servatorship, under the provisions of the ap-
propriation rider quoted above.

"The Liquidating Division occupies offices
in the Tribune Building in the City of Austin.
The Liquidator occupies an office in the Land
Office Building with the Board. There are six
administrative employees in the offices in the
Tribune Building and one attorney who acts as
legal counsel for the Liquidator. Warehouse
space is rented at 316½ South Congress Avenue
in Austin at a monthly rental rate of $25.00.
There is one employee in charge of the ware-
house. The warehouse rental and all salaries

and other expenses of the Liquidating Division are paid out of funds realized from the assets of insurers in process of liquidation, except for the space occupied in the Tribune Building, which space is furnished by the State of Texas.

"The Liquidator is appointed by the Board of Insurance Commissioners and his salary fixed by said Board. All other assistants are appointed by the Liquidator with advice and consent of the Board. Thus it will be seen that no direct appropriations are made from State Funds for the operation and maintenance of the Liquidating Division."

You have indicated by a conference in connection with this request that you are concerned about the duties, responsibility and authority of the State Auditor in connection with the activities of the "Liquidating Division".

It will be noted that there is no agency designated by statute as a "Liquidating Division". We do not construe Article 5068c as creating a "Liquidating Division" as an integral part of the organization of the Insurance Department, nor do we construe this statute as including the activities of the Liquidator and those functioning under him as a part of the duties of the Board of Insurance Commissioners. The Liquidator functions under the control of the Court, his activities being subject in several respects to supervision by the Board of Insurance Commissioners. He, and those functioning under him by virtue of this statute, are appointed by the Board of Insurance Commissioners; and their compensation is fixed by the Board. But the statute contemplates that the Liquidating personnel are to be paid out of the assets of the receiverships in their hands and their duties are for practical purposes those of the classic receiver operating as an agent of the court, subject to certain special provisions as set out in the statutes.

The Act contemplates that the funds and property in the custody of the Liquidator shall be those of private concerns, and not state-owned property nor state funds.

We assume from your statement that you are concerned with the activities of the Liquidator as such, and

not with such activities as are contemplated on the part
of the Board of Insurance Commissioners in connection
with their prescribed duties under the Act, since the
activities of the Board of Insurance Commissioners are
of course subject to the full force of the Act prescrib-
ing the duties of the State Auditor.

We believe that the Liquidator and those op-
erating under him are state agents and employees since
their official character is defined by statute and
their functions and authority are set into operation by
state agencies, namely:  the Board of Insurance Commis-
sioners and the Court.  However, the activities and
functions should be considered separate, distinct and
peculiar for purposes of determining the duties and re-
sponsibilities of the State Auditor in connection there-
with.

In order to determine the extent of the re-
sponsibilities of the State Auditor, we have examined
the provisions of Senate Bill 27, Chapter 293, Acts 48th
Legislature, Regular Session, 1939, page 429, published
as Articles 4413b-1 through 4413b-23 of Vernon's Civil
Statutes and Article 422b of Vernon's Penal Code.  The
caption of the Act describes it as "providing a more ef-
ficient fiscal system for the State of Texas including
(but not excluding other things) a uniform system of
accounting."  The State Auditor is in effect an arm or
agency of the Legislature.  Under Section 2 of the Act
is created a Legislative Audit Committee composed en-
tirely of members of the Legislature, and by Section 3
of the Act, it is provided that the State Auditor shall
be appointed by such Legislative Audit Committee.  He
is therein described as "an investigator of all custo-
dians of public funds, disbursing agents, and personnel
of departments."  (Emphasis supplied throughout this
opinion.)

Section 7 provides in part:

"The State Auditor is hereby granted
the authority and it shall be his duty:

"1.  To perform an audit of all ac-
counts, books and other financial records
of the State Government of any officer of
the state, department, board, bureau, in-
stitution, commission, or agency thereof,

and to prepare a written report or reports
of such audit or audits to the Legislative
Audit Committee and such other person or
persons hereafter designated in this bill.

"2. To . . . examine and audit all
fiscal books, records and accounts of all
custodians of public funds, and of all dis-
bursing officers of this state, making in-
dependent verifications of all assets,
liabilities, revenues and expenditures of
the State, its departments, boards, bureaus,
institutions, commissions or agencies there-
of now in existence or hereafter created.

"3. To require such changes in the ac-
counting system or systems and record or rec-
ords of any office, department, board, bureau,
institution, commission or state agency, that
in his opinion will augment or provide a
uniform, adequate, and efficient system of
records and accounting.

"4. . . . .

"5. To require the aid and assistance
of all executives and officials, auditors,
accountants and other employees of each and
every department, board, bureau, institu-
tion, commission or agency of the State at
all times in the inspection, examination and
audit of any and all books, accounts and
records of the several departments.

"The State Auditor shall have access at
all times to all of the books, accounts, re-
ports, confidential or otherwise, vouchers,
or other records of information in any state
office, department, board, bureau, or institu-
tion of this state. . .

". . . . It is the object and purpose
of this Act among other things to install a
unified and co-ordinated system of accounting
and records in every department, bureau,
board, and institution of the State Govern-
ment. . . ."

Section 8 provides in part:

"In addition to the other duties provided for the State Auditor, he shall thoroughly examine all departments of the State Government with special regard to their activities and the duplication of effort between departments and the quality of service being rendered by subordinate employees in each of the several departments.

"Upon completing the examination of any department, he shall furnish the heads thereof with a report of, among other things, (a) the efficiency of the subordinate employees; (b) the status and condition of all public funds in charge of such department; (c) the amount of duplication between work done by the departments so examined and other departments of the State Government; (d) the expense of operating the department; (e) breaches of trust and duty, if any, by an officer, department, institution, board, bureau, or other custodian or disbursement officer of public funds; (f) any suggested changes looking toward economy and reduction of number of clerical and other employees and the elimination of duplication and inefficiency . . . . .

"Reports shall also contain specific recommendations to the Legislature for the amendment of existing laws or the passage of new laws designed to improve the functioning of various departments, boards, bureaus, institutions or agencies of the State Government to the end that more efficient service may be rendered and the cost of government reduced.

"All recommendations submitted by the State Auditor shall be confined to those matters properly coming within his jurisdiction, which is to see that the laws passed by the Legislature dealing with the expenditure of public moneys are in all respects carefully observed, and that the

<u>attention of the Legislature is directed to
all cases of violation of the law and to
those instances where there is need for a
change of existing laws or the passage of
new laws to secure the efficient spending
of public funds.</u> . . .

All reports by the State Auditor shall
call attention to any funds, which, in his
opinion, have not been expended in accord-
ance with law or appropriation by the Legis-
lature; and shall make recommendations to
the Legislature as to the manner or form of
appropriations, which will avoid any such
improper expenditures of money in the future
. . . ."

In Section 10, it is provided:

"If the State Auditor finds in the course
of his audit evidence of improper practices
of financial administration or of any general
incompetency of personnel, inadequacy of fis-
cal records, he shall report same immediately
to the Governor, the Legislative Audit Commit-
tee, and the Department head or heads affected.
If the State Auditor shall find evidence of
illegal transactions, he shall forthwith re-
port such transactions to the Governor, the
Legislative Audit Committee and the Attorney
General.

"Immediately upon receipt of a report
from the State Auditor of incompetency of
personnel and inadequacy of fiscal records,
the Legislative Audit Committee shall review
the State Auditor's report of same and hold
hearings with the Department head or heads
concerning such incompetency and inadequacy
of fiscal records. The Legislative Audit Com-
mittee, after holding such hearings, shall
make a report to the Department head or heads
requesting the removal or replacement of the
incompetent personnel or the installation of
the necessary fiscal records. The Legislative
Audit Committee shall report to the Legisla-
ture any refusal of the Department officials
to remedy such incompetency or the installa-
tion of proper fiscal records."

The State Auditor is subject to removal by the Legislative Audit Committee. By Section 14, it is made a misdemeanor to refuse the State Auditor access to the records of any unit of the State.

Section 18 provides:

"Wherever the word 'department', 'board', 'bureau', 'institution', 'commission', or other word or words of similar import appear in any prior section of this Act, such shall mean each and every department, board, bureau, institution, commission or agency of the State Government."

The Act repeals the former Acts creating the State Auditor and Efficiency Expert, which was of similar import, but it is obviously intended to continue many of the duties of the State Auditor and Efficiency Expert, subject to certain modifications and clarification of his duties as set out in the present Act.

From the quoted provisions, we construe this Act to be primarily concerned with the handling of public funds and state revenues, the proper disbursement of legislative appropriations, and with general efficiency and elimination of duplication of employees in order to affect economy in the operation of the State Government. While the language of the Act is very broad and the authority and duties of the Auditor are extensive, we believe that the Auditor's responsibility ends at the point where the functions of any agency cease to affect such public funds and revenues. In speaking of the efficiency of personnel and of the operations of any State agency, we believe that the Legislature had in mind efficiency in so far as unnecessary or illegal expenditures of public funds are being made. With many State agencies, this would carry the Auditor into an examination of every activity and every phase of the functions of such agency, since inefficient personnel or operations would constitute an unnecessary drain upon public revenues.

However, in the case of the operations of the statutory Liquidator, public funds are only remotely involved. We do not believe that the Auditor is required or warranted to interfere with the administration of

the receiverships in the hands of the Liquidator except to the extent necessary to determine that any public funds involved are appropriately handled.

This Department held on somewhat different grounds in Opinion No. O-3536, rendered under a former Attorney General, that the State Auditor had no responsibility or duty to make an audit of the Tyler Field Office of the Governing Committee of Salt Water Control of the East Texas Oil Field. In that instance the Governing Committee for Salt Water Control was a non-statutory committee made up of a number of State officials under the terms of an agreement entered into in a lawsuit whereby the State was attempting to prevent pollution of the Neches River by oil operations. No state revenues or public funds were involved. The question arose under House Bill 170 of the First Called Session of the 31st Legislature, Acts 1929, Chapter 91, which was the Act creating the former office of State Auditor and Efficiency Expert. As before mentioned, its terms were of like import, in so far as material here, to the present Act creating the office of State Auditor. There, as in the present situation, the agency's functions were largely those of the Court in the determination of the litigants' rights, and the agency handled only private funds.

In conclusion, we deem it appropriate for the State Auditor to extend his inquiry into the affairs of the Liquidator, and those functioning under the Liquidator, sufficiently to determine that public funds are being properly handled, that expenditures under the Appropriation Acts are being properly made, that no duplication of personnel or inefficiency exists of a nature constituting a drain upon public funds, and that State-owned property is being used for proper purposes. We also believe that the authority to require changes in the accounting system or systems and records of an agency applies to the system of handling public funds and systems, the administration of which is a burden on state revenues, and that the authority does not apply to the system set up by the Liquidator for handling the receivership funds and property in the hands of the Liquidator.

We also call your attention to Opinion No. O-3695, rendered under a former Attorney General, holding on constitutional grounds in effect that such receivership proceedings are functions of the judiciary,

not subject to undue interference by other departments
of government.

SUMMARY

The Liquidator, and those function-
ing under him under Article 5068c, V. C. S.
(House Bill 249, Chapter 3, Acts 46th Legis-
lature, 1939, page 389) are agencies of the
State within the meaning of Articles 4413a-8
through 4413a-23, V. C. S., and Article 422b,
V. P. C. (Senate Bill 27, Chapter 293, Acts
48th Legislature, Revised Statutes, 1943,
page 429) defining the duties and responsi-
bility of the State Auditor. However, the
State Auditor's duties, applicable to the
Liquidator's functions, extend only to a
determination that public funds are being
properly handled, that legislative appro-
priations are being properly expended, that
no duplication of personnel or inefficiency
exists constituting a drain on public funds,
and that State-owned property is being used
for proper purposes.

                              Yours very truly,

                         ATTORNEY GENERAL OF TEXAS

                    By

                              Ned McDaniel,
                              Assistant.

NM/rt/erc


                         APPROVED MAY 10, 1947

                         ATTORNEY GENERAL